Todd D. Carpenter (SBN 234464)
*todd@lcllp.com*
Ethan Ames (SBN 339027)
*ethan@lcllp.com*
Christopher L. Cornelius (*pro hac vice* forthcoming)
*chris@lcllp.com*
**LYNCH CARPENTER, LLP**
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
Tel.: 619.762.1910

*Counsel for Plaintiff*
*and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

KATHERINE BEAVER, on behalf of herself and all others similarly situated,

Plaintiff,

v.

STEVE MADDEN, LTD., a Delaware corporation,

Defendant.

Case No.: 2:26-cv-7782

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Katherine Beaver ("Plaintiff") bring this action, on behalf of herself and all others similarly situated, against Defendant Steve Madden, Ltd. ("Defendant") and states:

## I. NATURE OF ACTION

1. This case arises from Defendant's illegal false price-discounting scheme implemented at its brick-and-mortar retail stores and e-commerce website, stevemadden.com ("Website"). False price-discounting occurs when a seller fabricates an inflated reference price, at which it seldom, if ever, sells a product, while offering the product "on sale" at what appears to be a significantly discounted price. In reality, there is no discount or savings because the reference price significantly overstates the



LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

product's value, as the product is almost always sold at prices below the reference price and, often, below the "sale" price. "It has long been considered a deceptive practice to state falsely that a product ordinarily sells for an inflated price but that it is being offered at a special reduced price[.]" *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 387 & n.17 (1965) (collecting cases).

2. Prices reflect both quality and value.[1] Discount retailers like Defendant therefore use inflated reference prices to manipulate the public's perception of their merchandise, misleading consumers into overestimating a product's quality and value and leading them to believe they are getting a bargain and higher-quality product when buying at a "sale" price. As a result, false price-discounting artificially inflates demand for a product, which, in turn, artificially inflates prices.[2] Specifically, "the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." Richard Staelin, *et al.*, *Competition and the Regulation of Fictitious Pricing*, 87 J. Mktg., 826, 835 (2023). Consequently, false price-discounting schemes enable retailers to sell more products and charge higher prices than they otherwise would without the false price-comparisons.

3. Based on her counsel's pre-suit investigation, Plaintiff alleges that Defendant seeks to capitalize on these known and proven effects of false price comparisons by advertising perpetual (or near perpetual) discounts from false reference

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (1992) [hereinafter Grewal & Compeau, *Comparative Price Advertising*] ("[P]rice is materially utilized in the formation of perceptions of the product's value and influences the decision to purchase the product or to continue to search for a lower price."); Patrick J. Kaufmann et al., *Deception in Retailer High-Low Pricing: A "Rule of Reason" Approach*, 70 J. Retailing 115, 118 (1994) ("[R]eference to a retailer's normal or regular price in retail sale price advertising provides the consumer with information used to determine perceived value").

[2] Grewal & Compeau, *Comparative Price Advertising*, *supra* note 1, at 55 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product.").

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

prices to entice consumers into buying products that they would not otherwise purchase and/or to pay more than they otherwise would, absent the false discounts. At all relevant times, Defendant has continually engaged in false price-discounting for its apparel and accessories sold throughout its brick-and-mortar stores and Website, including within California. In bringing this putative Class Action Complaint, Plaintiff seeks to remedy this deception and its attendant harm to consumers. Plaintiff seeks all applicable damages, including actual, statutory, and punitive damages as well as equitable restitution and injunctive relief from Defendant arising from its false price-discounting practices.

4. Through its false price-discounting scheme alleged herein, Defendant violated, and continues to violate, California consumer protection statutes and federal law. Specifically, Defendant violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (UCL"); California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); and the Federal Trade Commission ("FTC") Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

## II. PARTIES

**Plaintiff**

5. Plaintiff resides in Danville, California. Plaintiff is a citizen of the State of California. At the time of the purchase that gave rise to the causes of action described in this Complaint, Plaintiff was living temporarily in Los Angeles, California to attend the University of California, Los Angeles.

**Defendant**

6. Defendant is a Delaware corporation headquartered in Long Island City, New York. Defendant is a citizen of the State of Delaware and the State of New York.

7. Defendant is a leading American fashion footwear, apparel, and accessories brand that operates nearly 400 retail stores globally, including full-price and outlet formats, and runs multiple e-commerce platforms. Plaintiff is informed and believes that Defendant owns and operates stores throughout the United States, including 23 in California, where it advertises, markets, distributes, and/or sells footwear, apparel, and accessories. Defendant also owns and operates the Website through which it sells such products to consumers throughout the United States, including California.

## III. JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and Plaintiff, as well as at least some members of the proposed Class (defined below), have a different state of citizenship from Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California. Defendant operates 23 retail stores in California, including in this District, and also sells products to consumers within this District, including through its Website. Defendant directs its advertising and marketing activities to consumers in California, ships products to consumers in California, and derives significant revenue from sales to California residents. Defendant's Website is accessible to, and regularly used by, California consumers to purchase Defendant's products. On information and belief, California accounts for a substantial share of Defendant's U.S. online sales.

10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendant conducts business in this District.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

## IV. FACTUAL ALLEGATIONS

### A. Retailers Benefit from False Reference Pricing Schemes.

11. For nearly 50 years, the FTC invested significant resources in deterring the use of false reference pricing, so much so that in the 1950s, as much as 30% of the FTC's cease-and-desist orders in a typical year were related to false price discounting. *See* Staelin, *et al.*, *supra*, at 826. Despite these efforts, in 1970, the FTC decided to cease aggressive enforcement of its published guidelines and regulations aimed at preventing the use of false reference prices. *Id.* The reason for the FTC's shift in enforcement policies was due to the need to regulate what it believed were more egregious actions, and the FTC's belief that the practice of using false reference prices would dissipate as competition increased. Decades later, with the benefit of hindsight, economists have now concluded that the FTC's prediction was incorrect, and that its lax enforcement policies have backfired, as "fictitious pricing within the United States has . . . proliferated, is prevalent, and is pervasive. . . . as many firms consistently ignor[e] fictitious pricing statutes with impunity." *Id.* (cleaned up).

12. This does not come without consumer harm and consequences, as retailers like Defendant benefit substantially from false discounting schemes because consumers use advertised reference prices to make purchasing decisions, particularly when the information available to consumers varies among different types of products.[3] Most often, as with retail apparel and accessories, consumers lack complete

[3] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (*e.g.*, style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (*e.g.*, longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (*e.g.*, whether the shirt's cotton was produced using organic farming methods). Michael R. Darby & Edi Karni. *Free Competition and the Optimal Amount of Fraud*, 16 no. 1 J. Law & Econ. 67, 68–69 (1973).

information about the products, and as a result, they often rely on information provided by sellers, including pricing information, to make purchase decisions.[4]

13. Deceptively advertised reference prices are thus incorporated into consumers' decision process. First, a product's price is an indicator of product quality;[5] as such, consumers view inflated and false reference prices as a proxy for product quality. Second, reference prices appeal to consumers' desire for bargains or deals.[6] Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[7] Under this concept, coined as "transaction utility" by Nobel Prize-winning economist Richard Thaler, consumers place value on the psychological experience of obtaining a product at a perceived bargain.[8]

14. Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[9] and publications have summarized the empirical data as follows:

---

[4] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Phillip Nelson. *Information and Consumer Behavior*. 78 no. 2 J. Pol. Econ. 311, 311–12 (1970).

[5] Grewal & Compeau, *Comparative Price Advertising*, *supra* note 1, at 54; *see also* Richard Thaler. *Mental Accounting and Consumer Choice*, 4 no. 3 Mktg. Sci. 199, 212 (1985) [hereinafter Thaler, *Mental Accounting and Consumer Choice*] ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection").

[6] Grewal & Compeau, *Comparative Price Advertising*, *supra* note 1, at 52.

[7] Peter Darke & Darren Dahl. *Fairness and Discounts: The Subjective Value of a Bargain*, 13 no. 3 J. of Consumer Psych. 328 (2003).

[8] *See* Staelin, *et al.*, *supra*, at 826 ("It is now well accepted that many consumers get extra utility, beyond that associated with consuming a product from purchasing it on deal [] and that magnitude of this utility is a function of the size of the deal.") (citation omitted).

[9] Gurumurthy Kalvanaram & Russell S. Winer. *Empirical Generalizations from Reference Price Research*. 14 no. 3 Mktg. Sci. G161 (1995); *see also* Jerry B. Gotlieb



LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][10]

15. In the academic article *Competition and the Regulation of Fictitious Pricing*, published in 2023, authors Richard Staelin, a Duke marketing professor since 1982, Joel Urbany, a Notre Dame marketing professor since 1999, and Donald Ngwe, a senior principal economist for Microsoft and former marketing professor for Harvard, built on their prior analytic work to explain the effects of false reference pricing schemes and why their use has not dissipated as previously expected by the FTC. *See* Staelin, *et al*., *supra*, at 826–27.

16. As Staelin and his co-authors explain, the proliferation of false price-discounting can be attributed to several factors, including the absence of FTC's enforcement of its false price-discounting regulations, the modern development of consumer search behavior and options available to consumers (*e.g.*, smartphones, online shopping), which has amplified the ease and effectiveness of false price-discounting, and the incorrect assumption that competition would naturally push deceptive pricing out of the market by motivating sellers to provide truthful information. *See id.* at 829–834. In reality, heightened competition drove firms to

---

& Cyndy Thomas Fitzgerald. *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product*. 6 no. 1 J. of Applied Bus. Rsch. 59, 65–66 (1990) [hereinafter Gotlieb & Fitzgerald, *An Investigation*] ("The results of this research provide support for the position that [external] reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product.").

[10] Dhruv Grewal & Larry D. Compeau, *Pricing and Public Policy: A Research Agenda and an Overview of the Special Issue*, 18 no. 1 J. Pub. Pol'y & Mktg. 3, 7 (1999).



LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

differentiate through "noise" (*i.e.*, misleading information); thus, the authors conclude that competition *spread* the practice of false price-discounting, rather than extinguish it. *See id.* at 831 ("Identical firms selling identical products make positive profits because of their obfuscation strategy, and the likelihood of obfuscation grows as competition intensifies.").[11]

17. Consequently, retailers like Defendant, who understand that consumers are susceptible to bargain hunting, have a substantial financial interest in making consumers think they are getting a bargain, even when they are not. Contrary to the illusory bargains in Defendant's advertisements, consumers are not paying less than the true normal price, (or AUR), and therefore are not receiving any discount. Rather, they are actually overpaying for Defendant's product as "the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." Staelin, *et al.*, *supra*, at 835. In short, "recent empirical evidence suggests that fictitious pricing can produce significant positive returns for [retailers, but also] lead[s] to consumer welfare loss." *Id.* at 827.

**B. Defendant Engages in a False Price-Discounting Scheme.**

18. Defendant is a retailer that specializes in footwear, apparel, and accessories for men, women, and children. It engages in a false discount-pricing scheme that harms consumers by advertising its merchandise at discounted "sale"

---

[11] The author's proposed solution to curbing false price-discounting is the disclosure of the "true normal price." The "true normal price" refers to the price at which a product is ordinarily sold (such as a historical or modal selling price), serving as a clear and standardized benchmark which consumers can use to reliably assess what a product typically sells for and, in turn, whether a discount is *bona fide*. *See id.* at 842 ("[W]e believe the most effective metric to capture normal price is a firm's modal offering price in the most recent, relevant business period.") (citing 16 C.F.R § 233.1). Nearly all retailers internally track this metric and typically refer to it as the "Average Unit Retail" (AUR). *See Average Unit Retail (AUR): Meaning, Importance, & Formula*, 8th & Walton (Sep. 28, 2023), https://www.8thandwalton.com/blog/average-unit-retail//. ("AUR (Average Unit Retail) is the average selling price of an item within a specific period."). Retailers also track and project other metrics that provide additional context regarding what products typically sell for, and what they expect to sell for in the future, such as sales and margin projections.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

prices on its e-commerce Website. At the top of Defendant's homepage, the site's header prominently features nine distinct product categories, including a dedicated and highly visible section for the "SALE" page. The website prominently features a dedicated "Sale" section, where products are displayed with purported "original" or reference prices shown in strikethrough next to lower "sale" prices, conveying the impression of significant, time-limited discounts. In reality, many of these products are continuously offered at the same discounted price for extended periods. Through these practices, Defendant creates a false sense of urgency and savings, misleading consumers into believing they are obtaining genuine, limited-time deals when they are not.

19. Clicking the "SALE" tab on Defendant's Website leads to a dedicated offers page headlined "OUR CURRENT OFFERS." The page features quick links to shop all sale items or browse discounts by category. Defendant frequently displays items on sale, showing the original price with a strikethrough alongside the purportedly discounted price. The website frequently features seemingly limited-time "sale" prices and promotes additional discounts on top of what it presents as the regular site pricing, creating the impression of a significant deal.

20. Based on her counsel's pre-suit investigation, Plaintiff alleges that Defendant rarely, if ever, offers or sells its merchandise at the stated reference prices. Defendant uses inflated reference prices to induce consumers into making purchases under the reasonable, but incorrect, belief that the merchandise was previously offered and sold at the reference price in substantial quantities and/or for a substantial period of time, such that the consumer is paying less than what other reasonable consumers previously paid for the same product.

21. The analysis focused on data from items displayed on Defendant's Website between December 2024 and August 2025 and found that at least 43 of the products monitored on the website were confirmed to have been labeled "on-sale" for 13 or more consecutive weeks, with at least one product being on sale for at least 20

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

weeks. The reference prices, therefore, were not bona fide former prices, and the discounts were not temporary sales as advertised. These representations fall squarely into the misleading pricing practices described in 16 C.F.R. § 233.1(a) and Cal. Bus. & Prof. Code § 17501.

22. Even if Defendant previously offered its merchandise at a reference price for some brief period of time and/or at one or more locations, that limited offering would not mean Defendant complied with relevant law. To the contrary, the laws of many jurisdictions require that a reference price be the "prevailing" price over an extended time period (*e.g.,* 90 days), or they require that the reference price represent the price that was offered in good faith for a substantial period of time and/or the price at which a substantial number of sales were made in the recent past. *See, e.g.*, Cal. Bus. & Prof. Code § 17501 (requiring that a reference price equal the prevailing market price in the same locality during the three months preceding an advertised discount); 16 C.F.R. § 233.1(a) (requiring that a former price comparison be the "price at which the article was offered to the public on a regular basis for a reasonably substantial period of time.); *cf. id.* ("If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one").[12] In sum, Defendant's false price-discounting scheme does not comply with controlling law and is intended to increase sales while depriving consumers of the benefit of their bargain.[13]

---

[12] *See also* 16 C.F.R. § 233.3(a) ("To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer."); 16 C.F.R. § 233.3(d) ("[I]f the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price.").

[13] Staelin *et al.*, *supra*, at 826 ("It is now well accepted that many consumers get extra utility, beyond that associated with consuming a product, from purchasing it on deal [] and that the magnitude of this utility is a function of the size of the deal.").

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

23. Defendant knows that its reference price advertising is false, deceptive, misleading, unconscionable, and unlawful under California and federal law, because it rarely, if ever, offers or sells its merchandise at the reference prices. However, Defendant fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and other members of the proposed Class the truth about its advertised discount prices and former reference prices. Defendant concealed from consumers the true nature and quality of the products sold in its brick-and-mortar stores and Website. Defendant intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising to induce Plaintiff and the proposed Class to purchase its merchandise.

24. The full extent of Defendant's false and deceptive pricing scheme will be revealed through a full examination of its internal sales data and transactional records, which are exclusively in Defendant's possession, and which will be sought in discovery.

**C. Defendant's False Price-Discounting Scheme Harms All Consumers.**

25. A product's reference price serves as a baseline upon which consumers perceive its value.[14] Empirical studies "suggest that consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[15] Defendant's false reference prices mislead consumers into overvaluing its merchandise, which increases overall demand and allows Defendant to charge a premium for its merchandise that it could not obtain in the absence of the false price-discounting scheme.[16] *See also* Staelin, *et al.*, *supra,* at 835 ("[T]he higher

---

[14] Thaler, *Mental Accounting and Consumer Choice*, *supra* note 5, at 212.

[15] Gotlieb & Fitzgerald, *An Investigation*, *supra* note 9, at 66. Moreover, "if a higher reference price encourages consumers to pay a higher price for a product than the consumer was willing to pay for the identical product with a lower reference price, then the practice of using high reference prices would be deceptive." *Id.* at 60.

[16] Grewal & Compeau, *Comparative Price Advertising*, *supra* note 1, at 55 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product.").

reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins.") Accordingly, Defendant's false reference-pricing scheme allows it to profit at the expense of all its customers, because the scheme causes all Defendant's shoppers to pay more regardless of their individual beliefs or purchasing decision processes.

26. Fundamental economics concepts and principles dictate that the harm caused by Defendant's scheme is uniformly suffered by deceived and non-deceived shoppers alike. One such principle is that cost and demand conditions determine the market prices paid by all consumers.[17] The aggregate demand curve for a product represents consumers' valuation of that product as a whole. As consumers' valuation increases, the demand curve shifts outward, leading to an increase in the market price. Therefore, a specific individual's willingness to pay a certain price for a product does not negate the fact that market prices, as determined by aggregate demand, dictate what all consumers purchasing a given product will pay. Plaintiff and proposed Class members thus suffered a common price-premium impact from Defendant's misconduct.

**D. Defendant's False Price-Discounting Scheme Harmed Plaintiff.**

27. Plaintiff suffered an economic injury as a direct result of Defendant's illegal false price-discounting scheme.

28. On or about October 14, 2024, Plaintiff purchased items on Defendant's Website, including the "Bouquet Black Satin" shoes. The item was purchased for $59.97, on information and belief, against an advertised reference price of $79.95.

[17] Mankiw, N. *Essentials of Economics*, 8th Edition. Boston, MA: Cengage Learning, 66 (2015) ("[P]rice and quantity are determined by all buyers and sellers as they interact in the marketplace"); *see also* Hal R. Varian, *Microeconomics Analysis.* 3rd Edition. New York, NY: W. W. Norton & Company, at 23–38, 144–57, 233–353 & 285–312 (1992).

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910



**BOUQUET**
Color: BLACK SATIN
Size: 8

**$59.97**



**EMPORIA**
Color: SILVER
Size: 8

**$39.97**

| | |
|---|---|
| Subtotal: | $99.94 |
| Order discount: | - $29.98 |
| Shipping: | $8.95 |
| Tax: | $6.64 |
| Order Total: | $85.55 |

29. Based on the advertised reference price and sale price, Plaintiff believed the product she purchased was worth the higher value represented on the price tag, and that she was receiving a significant discount on the item she had chosen. Her belief that the discounted price on the item was limited and would not last was an integral factor in her purchase decision, and she would not have made the purchase were it not for the representations of a higher value and the significant bargain she thought she was receiving. The advertised reference price and discount were material representations to her, and she relied on them in making her purchase decision. However, Plaintiff did not receive a product worth the higher value referenced on the price tag, nor the benefit

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

of her bargain. To the contrary, she paid more for the item that it was worth in the form of a premium as a result of the false price-discounting scheme.

30. Given the prevalence of the deceptive pricing scheme detailed above, there is no basis to believe that the discounted price on the specific product Plaintiff purchased was a genuine exception to Defendant's standard practice. Indeed, the specific item Plaintiff purchased was part of the same deceptive scheme identified in Plaintiff's counsel's broader investigation.

31. Specifically, the available archival data—captured by the Internet Archive's Wayback Machine—provides an unbiased cross-section of Defendant's pricing practices over time. Across captured instances, the same product—Bouquet Black Satin—was offered at a purported discount from a constant reference price of $79.95, including on the following dates:

July 15, 2024 – sale price of $59.97 (from advertised reference price of $79.95);[18] and




[18] *Bouquet Black Satin*, Steve Madden, archived by the Internet Archive on July 15, 2024, at https://web.archive.org/web/20240715002434/https://www.stevemadden.com/products/bouquet-black-satin (last visited June. 28, 2026).



LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

September 17, 2024 – sale price of $59.97 (from advertised reference price of $79.95)[19]




32. Although the archived snapshots reflect only selected captures at various points in time, they consistently show that the product was never offered at the purported higher reference price of $79.95 and, instead, support the inference that Defendant's pricing of this product followed the same scheme and pattern of practice identified in Plaintiff's counsel's broader investigation.

**E. Plaintiff Faces a Threat of Future Reoccurring Harm and Lack an Adequate Remedy at Law.**

33. Plaintiff does not have an adequate remedy at law and is susceptible to recurring harm because they like the merchandise sold at Defendant's brick-and-mortar stores and on its Website. Plaintiff desires to continue purchasing additional items from Defendant in the future. However, Plaintiff is unable to discern which reference prices are inflated and untrue from truthful reference prices. Plaintiff may again, by mistake, purchase products with false reference prices and discounts in the future based on the reasonable, but incorrect, impression that the advertised reference prices are honest,

[19] *Bouquet Black Satin*, Steve Madden, archived by the Internet Archive on Sep. 17, 2024, at https://web.archive.org/web/20240917130805/https://www.stevemadden.com/products/bouquet-black-satin (last visited June. 28, 2026).

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

accurate, and bona fide. Plaintiff has no reasonable means to determine in the future whether Defendant is continuing to use false reference prices and discounts, or whether it has ceased this deceptive practice, and is therefore susceptible to recurring harm in the immediate future.

34. Absent an equitable injunction enjoining Defendant from implementing an unlawful false price-discounting scheme, Plaintiff, members of the putative Class, and the general public will be irreparably harmed and denied an effective and complete remedy because of the real and tangible threat of future harm emanating from Defendant's ongoing and deceptive conduct that cannot be remedied with monetary damages. Accordingly, Plaintiff, members of the putative Class, and the general public lack an adequate remedy at law, and an injunction is the only form of relief that will guarantee them the appropriate redress and assurances.

35. Moreover, Plaintiff lacks an adequate remedy at law with respect to her claims seeking equitable restitution because she has not yet retained an expert to determine whether an award of damages can or will adequately remedy her monetary losses caused by Defendant. Particularly, as legal damages focus on remedying the loss to the Plaintiff, and equitable restitution is concerned with money wrongfully obtained by Defendant. Furthermore, Plaintiff will seek to establish damages under various theories, such as the "purchase price," "price premium," and/or "benefit-of-the-bargain" theories, all of which can yield different sums of damages.[20]

[20] The purchase price theory allows a plaintiff to recover what they paid for the product, essentially a full refund. The price premium theory utilizes regression analyses to determine the outward shift of the demand curve of Defendant's merchandise due to the false price-discounting scheme, and thus the increase in price as a result of the surge in demand, the amount of which can be recovered as damages. Lastly, the benefit-of-the-bargain theory calculates the difference between the value represented (reference price) and the actual value received, which can be recovered as damages. Without expert analysis to determine the outward shift in the demand curve or the actual value received, Plaintiff does not know at the pleading stage, especially before the benefits of discovery, whether legal damages or equitable restitution would adequately remedy Plaintiff's and the putative Class's monetary losses.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

## V. CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class against Defendant:

> All persons who, within the State of California and within the applicable statute of limitations preceding the filing of this action, purchased from Defendant's brick-and-mortar stores or Website one or more products at a discount from an advertised reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more classes or subclasses, in connection with their motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

37. As alleged below, this putative Class satisfies the prerequisites of a class action as required by Federal Rule of Civil Procedure 23(a).

38. ***Numerosity-Rule 23(a)(1)***: The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains, at least, hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff, but a reasonable estimate can be made based on Defendant's internal records.

39. ***Existence and Predominance of Common Questions of Law and Fact-Rules 23(a)(2) and 23(b)(3)***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

a. whether, during the Class Period, Defendant used falsely advertised reference prices on its price tags and promotional materials and falsely advertised price discounts on merchandise sold in its California, brick-and-mortar stores and Website;

b. whether Defendant ever offered items for sale or sold items at their advertised reference price and, if so, for how long;

c. whether, during the Class Period, any of the original or reference prices advertised were the prevailing market prices for the products at issue;

d. whether Defendant's advertised sale prices and/or percentage-off discounts reflect any actual discounts or savings;

e. whether Defendant made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;

f. whether Defendant's alleged conduct constitutes violations of federal and/or California statutes and regulations;

g. whether Defendant engaged in an unconscionable commercial practice, and/or employed deception or misrepresentation under the laws asserted;

h. whether Plaintiff and Class members are entitled to actual damages and/or restitution and the proper measure of damages and/or restitution; and

i. whether an injunction is necessary to prevent Defendant from continuing to use false, misleading, or illegal price comparisons.

40. ***Typicality-Rule 23(a)(3)***: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

41. ***Adequacy-Rule 23(a)(4)***: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained well-funded counsel, experienced in complex consumer class action litigation, including class actions based on

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

allegations of false price-discounting schemes, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

42. ***Superiority-Rule 23(b)(3)***: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to herself and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members are relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds. Moreover, prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications and would lead to repetitious trials of the numerous common and predominant questions of fact and law, which could lead to the establishment of incompatible standards of conduct for Defendant. Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of other Class members. By contrast, the class action device presents far fewer management difficulties and the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

43. ***Rule 23(b)(2)*:** The putative Class also satisfies the prerequisites of an injunctive relief class identified in Federal Rule of Civil Procedure 23(b)(2) as all Class members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact, as alleged herein. Due to the scope and extent of Defendant's consistent false price-discounting advertising scheme,

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

disseminated in a years-long campaign to consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing merchandise sold at Defendant's stores or Website.

44. Defendant has acted or has refused to act on grounds that generally apply to the Class, such that final injunctive relief is appropriate as to the Class as a whole. Specifically, Defendant has continuously enforced a systematic and uniform policy of advertising misleading, untrue and illegal reference prices in violation of California law, such that injunctive relief is necessary to avoid ongoing violations in the future.

45. Plaintiff is informed that Defendant keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs, credit card programs, and general marketing programs. Defendant has one or more databases through which a significant number of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

46. Alternatively, Plaintiff will seek certification of particular issues pursuant to Federal Rule of Civil Procedure 23(c)(4).

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of California's False Advertising Law (FAL)
### CAL. BUS. & PROF. CODE § 17500, *et seq.*

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–46 as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of Class members Defendant for violations of California's FAL, Cal. Bus. & Prof. Code § 17500, *et seq*.

49. Cal. Bus. & Prof. Code § 17500 provides:

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(emphasis added).

50. The FAL further provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published. No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

51. Defendant's routine practice of advertising discounted prices from false reference prices, which are not and never have been the prevailing market prices of those products and were materially greater than the true prevailing prices (*i.e.,* Defendant's average and/or most common actual sale price), constitutes an unfair, untrue, and misleading practice in violation of the FAL. This deceptive marketing

practice gave Plaintiff and Class members the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold by Defendant are worth more than they actually are.

52. Under all circumstances, Plaintiff alleges that the reference prices are not the prevailing market prices as required under the FAL. That is because Defendant almost always, if not always, sells its products, including the items purchased by Plaintiff, at prices substantially lower than the advertised reference price, thereby establishing that its reference prices greatly exceed the prevailing market price of its merchandise in violation of Cal. Bus. & Prof. Code § 17501.

53. As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiff and Class members did not receive the benefit of their bargain and suffered economic injury.

54. Plaintiff, on behalf of herself and Class members, request that this Court order Defendant to restore this money to Plaintiff and the Class, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## SECOND CAUSE OF ACTION
**Violation of California's Unfair Competition Law (UCL)**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***

55. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–46 as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of the Class against Defendant for violations of the UCL, Cal. Bus. & Prof. Code § 17200, *et seq*.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

57. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

58. The UCL imposes strict liability. Plaintiff and members of the proposed Class need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

***"Unfair" Prong***

59. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

60. Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendant's acts and practices offended an established public policy of transparency in pricing, including regulations enacted by the FTC, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

61. The harm emanating from this practice to Plaintiff and members of the proposed Class outweighs any utility it provides because Defendant's practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

62. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

63. Defendant's acts and practices alleged above constitute fraudulent business acts or practices as Defendant has deceived Plaintiff and members of the Class and is highly likely to deceive members of the consuming public. Plaintiff and members of the Class relied on Defendant's fraudulent and deceptive representations regarding its false reference prices for products sold by Defendant. These misrepresentations played a substantial role in Plaintiff's and members of the proposed Class's decisions to purchase products at a purportedly steep discount, and Plaintiff would not have purchased products without Defendant's misrepresentations.

***"Unlawful" Prong***

64. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

65. Defendant's acts and practices alleged above constitute unlawful business acts or practices, as Defendant has violated state and federal law in connection with its deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1), and prohibits the dissemination of any false advertisements, 15 U.S.C. § 52(a). Under the FTCA, false former pricing schemes, like Defendant's, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised***

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

> ***is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $______"), unless substantial sales at that price were actually made. 16 C.F.R. § 233.1(a) and (b) (emphasis added).

66. In addition, as described in the First Cause of Action above, Defendant violates the FAL because it advertises items, including the items that Plaintiff purchased and are described herein, with a former price that greatly exceeds the prevailing market price of those items, and is therefore an "unlawful" act in violation of the UCL.

67. As detailed in the Third Cause of Action below, California's CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

68. As detailed herein, and for the same reason that Defendant's acts and practices violate the FTCA and the FAL, they also violate the CLRA, thus establishing another "unlawful" act in violation of the UCL.

69. Defendant's practices, as set forth above, misled Plaintiff, the Class, and the public in the past and will continue to mislead them in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

70. Defendant's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat to Plaintiff, members of the Class, and the public who, if Defendant's false pricing scheme is permitted to continue, will continue to be deceived into purchasing products based on illegal price comparisons. These false price comparisons lead to artificial and increased demand, which, in turn, leads to higher prices and financial harm for consumers like Plaintiff and the members of the Class, as described herein. Because of the surreptitious nature of Defendant's deception, these injuries cannot be reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Defendant's practice.

71. Pursuant to Bus. & Prof. Code § 17203, Plaintiff and members of the Class are entitled to preliminary and permanent injunctive relief enjoining Defendant from continuing to engage in this unfair competition alleged above, as well as disgorgement and restitution to Plaintiff and the Class of all Defendant's revenues wrongfully obtained from them as a result of Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of California's Consumers Legal Remedies Act (CLRA)**
**CAL. CIV. CODE § 1750, *et seq.***

72. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–46 as if fully set forth herein.

73. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant for violations of the CLRA, Cal. Civ. Code § 1750, *et seq.*

74. Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of products were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and members of the Class are "goods" or "services" within the meaning of Cal. Civ. Code § 1761(a)–(b).

75. For the reasons described above, Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of products sold at Defendant's brick and mortar stores and Website:

a. advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

b. making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

76. Plaintiff and the Class are consumers who have suffered economic injury and damages, including benefit-of-the-bargain damages, and/or out-of-pocket loss damages, as a direct result of Defendant's use and employment of the false and misleading reference pricing alleged herein. Defendant represented that its products were worth the higher reference prices stated on its price tags. In fact, the products that Plaintiff and Class members purchased were not worth as much as Defendant represented them to be worth, and Plaintiff and the Class therefore did not receive the benefit(s) of their bargain(s). Additionally, Defendant's false reference pricing scheme artificially increased consumer demand for its products, thereby causing Plaintiff and the Class to pay higher prices than they otherwise would have paid absent Defendant's false price discounting scheme.

77. Pursuant to Cal. Civ. Code §1780(a), Plaintiff seeks an order enjoining such methods, acts, or practices as well as any other relief the Court deems proper.

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910

Plaintiff additionally seeks costs and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1780(e).

78. Plaintiff, through counsel, will send a CLRA demand letter by certified mail to Defendant that provides notice of Defendant's violation of the CLRA as alleged herein, and demand that Defendant notify all members of the Class and correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. If Defendant does not respond to Plaintiff's letter and agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiff will amend this complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests that this Court award relief against Defendant as follows:

1. an order certifying the Class and designating Plaintiff as Class Representative, and their counsel as Class Counsel;

2. awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

3. awarding declaratory and injunctive relief as permitted by law or equity, including preliminarily and permanently enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

4. retaining jurisdiction to monitor Defendant's compliance with permanent injunctive relief;

5. ordering Defendant to engage in a corrective advertising campaign;

6. awarding attorneys' fees and costs;

7. for leave to amend these pleadings to conform to evidence adduced at trial; and

8. for such other and further relief as the Court may deem necessary or appropriate.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: July 16, 2026

**LYNCH CARPENTER, LLP**

By: */s/ Todd D. Carpenter*

Todd D. Carpenter (SBN 234464)
*todd@lcllp.com*
Ethan H. Ames (SBN 339027)
*ethan@lcllp.com*
Christopher L. Cornelius (*pro hac vice* forthcoming)
*chris@lcllp.com*
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
Tel.: 619.762.1910

*Counsel for Plaintiff and the Proposed Class*

LYNCH CARPENTER
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
619.762.1910